## GILLIAM et al., Appellants, v. LOEB, Respondent.

### St. Louis Court of Appeals, April 14, 1908.

1. **PARTIES: Suit by One Partner Against Another.** The common law rule, which is somewhat modified by statute, is that a partnership is regarded as an entirety and an action at law will not lie in favor of one or more partners against the others, in a case springing out of the partnership business, until the affairs of the firm have been settled and a balance struck.

2. ———: ———: **Exception to Rule: Fraud.** But sometimes a controversy arises between partners, connected with the firm business but really upon an independent footing, in regard to which an action at law will lie by one partner against another. Where one of several partners induced the other partners each to contribute a share of money for the purpose of buying property, misrepresenting to them the purchase price so that they paid more than the property cost, and he pocketed the excess, the partners so defrauded could maintain an action against the partner defrauding them for the excess paid as for money had and received.

3. ———: ———: ———: And in such case it is not necessary that all the partners defrauded should be made parties to the action where they made their payments separately; each of the defrauded partners could bring a separate suit to recover the excess of his contribution to the purchase price.

4. ———: ———: **Pleading: Amendment.** A petition alleged that the plaintiffs, defendant and others formed a partnership for the purpose of buying a jack and the defendant negotiated the purchase of the jack, representing to the other partners that it cost a sum in excess of what he actually paid for it, and that they contributed their portion of the price represented, asking judgment for the excess of plaintiffs' contribution over the real price. The petition was amended by omitting the allegations of the partnership and alleging that the parties were co-owners of the property purchased. This was not a change of a cause of action. The allegations of the partnership in the first petition were not of the essence of the case stated, but the fraud perpetrated upon the parties.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED (*with directions*).

Gilliam v. Loeb.

*G. Emerson* and *O. L. Cravens* for appellants.

(1) The claim advanced below by defendant as a ground for the striking out of the amended petition was that it was a departure from the original cause of action. The Supreme Court has announced a test under this statute in determining whether the amendment will be allowed. The rule is quoted from the Supreme Court of Vermont: "As long as the plaintiff adheres to the contract or injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury, is not an introduction of a new cause of action." Rippee v. Railroad, 154 Mo. 358; 71 Mo. App. 557; Clothing Co. v. Railroad, 71 Mo. App. 241; Heman v. Fanning, 33 Mo. App. 50; Rechnitzer v. Vogelsong, 117 Mo. App. 148; Dowdy v. Wamble, 110 Mo. 280, 41 Mo. App. 573; Straub v. Eddy, 47 Mo. App. 189; Hall v. Railroad, 80 Mo. App. 463; Wood v. Railroad, 39 Mo. App. 63; Nutter v. Houston, 42 Mo. App. 365; Lamb v. Bush, 49 Mo. App. 337; Eubank v. Pope, 27 Mo. App. 463; Shaffner v. Leahy, 21 Mo. App. 110; King v. Railroad, 79 Mo. 328. (2) The court erred in dismissing the cause after striking out the amended petition. The original petition sufficiently set forth plaintiffs' course of action. Hale v. Van Dever, 67 Mo. 732; Allen v. McMonagle, 77 Mo. 478; Force v. Squier, 133 Mo. 306; Bell v. Boyd, 66 Mo. App. 137; Glenn v. Weary, 66 Mo App. 75; Collins v. Burnes, 66 Mo. App. 70; Boefer v. Sheridan, 42 Mo. App. 226; Johnson v. Moffett, 19 Mo. App. 159; Strathmoun v. Gorla, 14 Mo. App. 1. (3) Even if the allegations are tantamount to an averment of partnership, yet a right of action at law exists in favor of one copartner against the other for fraud and deceit in enticing him into a concern, or in obtaining money or property from him by fraudulent representations. The transactions set out in the two petitions were had before any partnership was launched. Bates on Partnership, sec. 897; Rice v. Culver, 32 N. J.

Eq. 601; Hall v. Wilson, 112 Mass. 444; Mose v. Hutchins, 102 Mass. 439; Child v. Swain, 69 Ind. 230; Gates v. Paul, 117 Wis. 170, 94 N. W. 55; Bergeron v. Miles, 88 Wis. 397, 48 Am. St. 911.

*George R. Clay* and *Horace Ruark* for respondents.

(1) Plaintiffs having by their allegations shown a joint cause of action or right of recovery in others besides themselves, cannot sue alone without joining those jointly interested whether copartners or joint owners. One of two joint owners of goods cannot sue alone for their conversion. Little v. Harrington, 71 Mo. 690. Section 544, Revised Statutes 1899, provides that those who are united in interest must be joined as plaintiffs, and if one so interested refuses to join as plaintiff then he may be made a party defendant. In case of non-joinder there can be no recovery by the party suing for his aliquot part. Rainder v. Smezer, 28 Mo. 310; Ryan v. Riddle, 78 Mo. 521; Miller v. Crigler, 83 Mo. App. 395; Seay v. Sanders, 88 Mo. App. 486. (2) Besides, the plaintiffs' petition designates the company as being a copartnership of which it alleges the defendant and plaintiff were members, and which company they claim defendant defrauded. Now it is well settled that one partner cannot sue another in relation to the partnership matters, whether arising in contract or tort. Baldwin v. Walsen, 41 Mo. App. 243; Morin v. Martin, 25 Mo. 361; Leckie v. Rothenbarger, 82 Mo. App. 615; Bond v. Benis, 55 Mo. 524; Scott v. Coruth, 50 Mo. 120; 62 Mo. App. 131. (3) The amended statement was properly stricken out, as attempting to change a joint to a several cause of action. It is not permissible on appeal from a justice of the peace to change a joint cause of action to a several cause of action. "For in that case there is an entire change of cause of action from a joint to a several cause of action which is not permissible." Slaughter v. Davenport, 151

Mo. 29; Slaughter v. Davenport, 82 Mo. App. 652; Thieman v. Goodnight, 17 Mo. App. 434; Evans v. Railroad, 67 Mo. App. 255; Gregory v. Railroad, 20 App. 448; Adler v. Railroad, 110 Mo. App. 342; Powell v. Shipps, 85 Mo. App. 467; Heimberger v. Harrison, 83 Mo. App. 544.

STATEMENT.—This action was originally instituted before a justice of the peace on the following complaint:

"Plaintiff's for their statement say that in the spring of 1906, they and defendant and a number of others were desirous of purchasing a jack; that defendant was desirous and called on plaintiffs and a number of others for the purpose of getting up a company to purchase a jack and bring him into their neighborhood, that plaintiffs and defendant and others held meetings for the purpose of getting up a company that was being promoted by said defendant for the purpose of buying a jack aforesaid, each member of said company to take a small share in the enterprise; that defendant was to become a member, and did become a member of said company or co-partnership and was acting for the company in getting up the enterprise and buying a jack for the said company; that the defendant was desirous of purchasing what is known as the old "Mit" Yost jack and went around and saw plaintiffs and others and informed and represented to them that said "Mit" Yost jack would cost eight hundred dollars ($800), and that said "Mit" Yost would not take a cent less than eight hundred dollars for said jack, and that a number of the said company protested against the price of the said jack as being too high, and said defendant informed plaintiffs and others that he would again see if the said "Mit" Yost would sell his jack for a sum less than eight hundred dollars, and again informed plaintiffs and other members of the company said jack could not be purchased from the said "Mit" Yost for a less sum; that the

said jack was purchased from the said "Mit" Yost for said company by said defendant, who represented the cost of said jack to be eight hundred dollars, to be paid to the said "Mit" Yost, and the ownership of the said jack was divided up in sixteen parts, the said plaintiffs taking three-sixteenths interest in said jack; in connection with others of the company, making eleven-sixteenths, and said defendant five-sixteenths interest; that the said plaintiff paid to the said defendant fifty dollars ($50), to be paid the said "Mit" Yost, together with one note of $100 in full of their interest; that the said plaintiffs relied upon and believed the statement and representations made by defendant to plaintiffs of the cost of said jack, and upon his representations the said plaintiffs parted with the said fifty dollars; that said defendant's representations and statements as aforesaid to members of said company were false and fraudulent in this, the said "Mit" Yost sold the jack at the price of four hundred dollars ($400) on one year's time and received through the said defendant, from some members of the company, their notes to the amount of four hundred dollars, payable in one year after date, and the said defendant, through his fraudulent representations and schemes and statements, to his co-partners or company, induced and willfully and fraudulently obtained from the company four hundred dollars more than the cost of the said jack to said company. Among this is the fifty dollars paid by the plaintiffs, for which said plaintiffs pray judgment for fifty dollars and costs of suit."

Plaintiffs having recovered judgment before the justice an appeal was taken to the circuit court, where an amended complaint was filed, which reads as follows:

"Plaintiffs for their amended petition state that they are farmers and cattle raisers and are partners in such business, and were at all times hereinafter mentioned; that defendant solicited plaintiffs to join with him and others for the purchase of a certain jack owned

by one Yost and to contribute a certain portion of the purchase money for that purpose and thereby, with defendant and such others as he may interest, become the owners of the jack so to be purchased as aforesaid; that defendant falsely and fraudulently represented and pretended to plaintiffs that said Yost asked for this particular jack $800, and would not take any less, when defendant well knew said Yost would then take $400 therefor; that these plaintiffs, relying upon and believing said false and fraudulent representations of defendant, and believing same to be true, not knowing the real truth, agreed to pay and contribute for the purchase of said jack $150, and did pay and contribute that sum to defendant and authorized him as agent for plaintiffs to purchase the same; that defendant took upon himself the agency of purchasing the jack and bought the same from Yost for the secret price of $400, all of which was concealed from plaintiffs, and he falsely represented to them he had paid $800 therefor; that according to the terms of the purchase, as agreed on between the parties, plaintiffs were to own three-sixteenths of said jack; that by reason of the false representation and pretenses aforesaid, and by reason of the trust and confidence reposed in him, all as above stated, there is due from defendant to plaintiffs, $75, as the difference between what said defendant purchased said jack for, on the basis of said interest of plaintiffs therein, and what he represented was its cost, for which plaintiffs ask judgment, less $25 which they voluntarily remit in this action."

On motion of defendant the court struck out the amended petition and afterwards, on motion of defendant, dismissed the cause, to which rulings plaintiffs saved exceptions, and final judgment having been entered against them, prosecuted this appeal.

GOODE, J. (after stating the facts)—The amended statement was stricken out as a departure; as setting

up a different cause of action from that alleged in the original statement filed with the justice of the peace. The motion to dismiss the cause is not in the record, but we are told in one of the briefs, it was dismissed because the complaint filed with the justice counted on a cause of action in which the two plaintiffs were jointly interested as partners with the other parties alleged to have been defrauded by defendant; and because it solicited a judgment at law, whereas the only remedy lay in equity, the fraud having been perpetrated on the members of a partnership in the course of the partnership business.    We will first consider whether or not the cause of action as originally stated could be maintained; for if it could not, the case was rightly dismissed; and even though the court erred in striking out the amended statement, no harm resulted from this ruling.    The first statement says a partnership was formed, consisting of plaintiff, defendant and other persons, to buy a jack, but the facts alleged show a common ownership of the animal rather than a partnership.    The jack was bought for $800 pursuant to an agreement that plaintiffs should have a three-sixteenths interest,    defendant a five-sixteenths interest and the other owners an eight-sixteenths interest.    Nevertheless as it is positively charged a partnership was formed, this averment ought to be taken against the pleader.    It is further averred the several members contributed in proportion to their respective interests to the purchase price of the jack as represented by defendant ($800) and that of said price plaintiffs paid $50 in cash to defendant and gave a note for $100, to be paid to the person from whom the animal was purchased.    Allegations are made that defendant promoted the formation of the company and the purchase of the jack, and acted for the company in buying it.    The latter allegation is equivalent to an averment of agency on the part of the defendant.    According to the facts alleged defendant told the several buyers the price of the

jack was $800, whereas it was $400, and by this false representation he obtained from his associates $400 in cash above the true price, of which excess of cash $50 was paid by plaintiffs, for which they prayed judgment. The statement avers Yost, the owner and seller of the jack, was paid in notes due one year after date, given by the different members of the firm. The cash collected by defendant as part of the purchase price was alleged to have been obtained by said fraudulent conduct and the action is for money had and received. It is apparent that if the facts stated in the complaint are true, defendant obtained $400 from plaintiffs and others by a gross fraud and is liable to them in some form of action. A point of difficulty might arise regarding whether there is a common right of action in the two plaintiffs. No question has been made about this matter, and perhaps it is fairly inferable that plaintiffs were understood to act as a unit in contributing one portion of the purchase price, and to have acquired jointly the three-sixteenths interest in the jack alleged to be owned by them. The attack on the cause of action stated in the original complaint is made solely on the ground that the facts stated show the right to sue is joint in all the members of the firm; that all of them were essential parties, either as plaintiffs or defendants and there could be no recovery by one or more of an aliquot part of the money obtained by defendant. In other words, it is contended the partnership as an entirety was defrauded and not the individual members. This contention is unsound; for defendant himself was a member of the firm and he was not defrauded, but only his comembers. Therefore the firm as a whole was not defrauded. We think those decisions holding two or more promisees of a joint contract must sue on the promise, or two or more joint owners of property for its conversion, are not in point. Such cases are: Little v. Harrington, 71 Mo. 390; Rainey v. Smizer, 28 Mo. 310; Miller v. Crigler, 83

Mo. App. 395; State ex rel. v. True, 25 Mo. App. 451; Morin v. Martin, 25 Mo. 361. This action is neither on a contract by joint obligees, nor for property jointly owned by others along with the parties suing. The possible obstacle to plaintiffs' case arises on the averment of a partnership and the rule that partners cannot sue each other at law for demands growing out of firm transactions. The common law rule, which has been modified somewhat by statute, is that all partnership contracts are joint only and not joint and several; and hence, in actions by or against partners, all must be made parties as plaintiffs or defendants. [Willis v. Barron, 143 Mo. 350, 45 S. W. 289.] At common law a partnership was so far regarded as an entirety, that an action would not lie in favor of one or more partners against the others, on a case springing out of partnership business, until the affairs of the firm had been settled and a balance struck. [15 Ency. Law, Pl. and Pr., 1005; Stothert v. Knox, 5 Mo. 112; Knight v. McCutchen, 27 Mo. 436; Smith v. Smith, 33 Mo. 557; Bond v. Bemis, 55 Mo. 524; Bambrick v. Sims, 102 Mo. 158, 14 S. W. 935.] In legal theory the several partners would have to be both plaintiffs and defendants in the action, which is not allowable; and this is the technical reason for refusing to allow an action until a settlement of the business shows an indebtedness of one or more of the partners to the others. [15 Cyc. Pl. and Pr., 1011; 1 Collier, Partnership (6 Ed.), 322, note 3.] There is said to be a deeper reason for the rule: i. e., that until an accounting is had and a balance struck, the relation of debtor and creditor does not exist between the partners, nor can it be known that any member of the firm owes the others; because perchance, he may have advanced more than his proportion toward the capital, or in payment of firm debts, or have borne an undue share of the losses, or may possess other offsets against any demand on him by his comembers. [2 Bates, Partnership,

sec. 849; 15 Cyc. Pl. and Pr. 1015, and cases cited in note 2.] Controversies and claims between members of a firm come under one of the heads of equity jurisdiction and usually partners must seek relief against each other in chancery. But there are exceptions both real and apparent to this rule. If only one matter or item is in dispute between partners, an action at law may be maintained on the item, though there has been no settlement of the firms affairs or balance struck. [2 Bates, secs. 865, 866; Buckner v. Ries, 34 Mo. 357; Whetstone v. Shaw, 70 Mo. 575; Bambrick v. Sims, 132 Mo. 48, 33 S. W. 445.] And sometimes a controversy between persons who are members of a partnership, will appear on first view to have arisen out of a transaction connected with the firm's business, when really it stands on an independent footing, and may be the subject of a legal action between the partners, not as such but in their individual capacities. [2 Bates, sec. 868; Seaman v. Johnson, 46 Mo. 117; Russell v. Grimes, 46 Mo. 410; Stone v. Wendover, 2 Mo. App. 247; Howe v. Howe, 99 Mass. 71; Soule v. Frost, 76 Maine 119.] In the first of those cases it is said an action at law will lie by one partner against another, without a settlement of partnership accounts, for money had and received by the party sued as the plaintiff's agent, in an account unconnected with the firm's affairs. In Whitehill v. Schickle, 43 Mo. 537, it was said an action at law will lie between partners "upon matters outside the partnership or where the dispute is so disconnected with the general partnership accounts as not to involve their investigation and settlement." And in Russell v. Grimes, 46 Mo. loc. cit. 412, this proposition is found: "Partners are not forbidden to sue each other at law merely because they are or have been partners, but only when the adjustment of the matter in controversy involves the investigation and settlement of the partnership accounts." The 15 Am, and Eng. Ency. Law, 1035, in discussing the several classes

Gilliam v. Loeb.

of exceptions to the general rule prohibiting actions at law between partners, says the reason on which all the exceptions are allowed is that they do not involve partnership accounts, "because the rights and obligations assumed to be enforced are the individual rights and liabilities of the partners and not firm demands or liabilities." In Howard v. France, 43 N. Y. 593, it was said "if no matter of account is involved and the money when received will not belong to the firm there is no objection to the action upon the ground of partnership between the parties." These authorities appear to lose sight of the other common law objection to actions between partners regarding firm matters, i. e., that all firm obligations and demands are regarded as joint; which theory, when applied to pleadings, would require partners to be both plaintiffs and defendants if actions between themselves were allowed.

For aught shown in the original complaint filed by these plaintiffs, their concern had no other affairs or business—no transactions of any kind—except the purchase of the jack. Hence there are no accounts whose settlement might show an indebtedness from defendant to his co-partners or from them to him, and no dealings have occurred on which a balance could be struck. The alleged fraud of defendant, even if it was intertwined with the partnership relation, stands out as a solitary item. In such a case, as we have seen, the courts allow an exception to the usual rule and an action at law will lie.

That a partner who procures from his copartners a sum of money ostensibly to make a purchase for the firm, and appropriates the money to his own use, cannot be reached except by a suit in equity wherein an account can be taken of the entire business of the firm, is a theory repugnant to our minds and which we are disposed to reject if it is not enforced by decisive precedents. But the most apposite precedents, both those dealing

with partnerships and those dealing with joint owner-
ships, reject it.  We have found no case in which the
principle the courts acted on in holding the culpable
partner liable in an action at law, was expounded, but
some of the decisions cannot be distinguished in their
material facts from the one at bar.  The courts appear
to isolate a transaction in which a gross fraud or other
wrong is perpetrated by one partner on his associates,
and to regard it as so far detached from the general
partnership affairs that it may be treated jurisdiction-
ally as if all said affairs, except a single item, had been
adjusted.  This is nowhere said, but it seems to be the
result of the adjudications.  Bates says in his treatise
that if a partner, by an act outside his authority, creates
against his co-partners a liability he could not have
called on them to share; they may recover from
him the amount they have to pay in consequence
of the liability; and that in this class of cases, if
the payment is out of a joint fund, or the money is bor-
rowed on a joint note, the action will be a joint one, but
if the payment is from their private means, each must
recover separately; citing Osborne v. Harper, 5 East.
225; Graham v. Robertson, 2 T. R. 282; Cross v. Ches-
hire, 7 Exch. 43; Fuller v. Percival, 126 Mass. 381;
Calkins v. Smith, 48 N. Y. 604; 2 Bates, sec. 895, 896.
We are not satisfied those cases fully support the text;
for the actions were either against third parties who
were supposed to have participated in the fraud, or
were brought after the dissolution of the firm.  That is
to say, the copartners were not suing each other.  But
other cases are authority for the text.  In Grant v.
Hardy, 33 Wis. 668, the two parties had jointly pur-
chased certain mining lands from one Stonebraker for
$8,000.  Hardy was Stonebraker's agent to sell the land
and had induced Grant to take a three-fourths interest
and furnish $6,000 of the supposed purchase price;

Hardy agreeing to take and pay for the o'her one-fo''''t'
interest. By collusion between Stonebr.k.r and ﹏a﹍
the former stated the price at $8,000, but had agr﹍d
with Hardy to take $6,000. Hence the latter obtained a
fourth interest for nothing, which Grant afterwards
purchased from him for $2,100, and having detected the
fraud, sought to recover the money. Grant and Hardy
bought for the purpose of mining the land as partners
and commenced operations, and it was after the forma-
tion of the contract of partnership and while the rela-
tion subsisted, the land was purchased and the fraud
perpetrated. The court said Hardy could not reta'n a
benefit accruing from a betrayal of confidence r﹍o
in him, and a recovery was allowed. An identical case i
Gates v. Paul, 117 Wis. 170, wherein it appeared the ·
ties had entered into a partnership to purchase t
lands in the south; Paul agreeing to contribute the ﹍
ey to buy the lands and Gates who was a timber ex﹍ ﹍
to select the lands for a one-sixth interest. The ﹍ ﹍
was instituted by Gates for a dissolution of the par﹍er
ship and to have an undivided one-sixth interest in th﹍
lands, the title to which had been taken in Paul's name,
vested in him. Presumably this was a suit in equity.
On the hearing it developed that Gates had represented
to Paul the price of one of the tracts was $10,000, when
in truth it had cost but $5,000, and in consequence Paul
was defrauded by overpaying the purchase price. The
court said that at the time the suit was commenced, Paul
had a cause of action at law against Gates for the excess
paid and interest, and further: "The principle ruling
the matter is the same as in any other case where one
person takes another into a transaction, ostensibly on
the ground floor, while he in fact, by false pretenses, is
obtaining an unfair advantage over his trusting associ-
ate. The defrauded person may keep his interest in the
property purchased and sue at law to recover his dam-
ages, or he may rescind the transaction and sue at law

to recover the consideration which he paid for the property, or he may sue in equity for a rescission and an accounting." [Loc. cit. 190.] In these decisions a prior decision (Bergeron v. Miles, 88 Wis. 397, 43 Am. St. Rep. 911) was approved. The Bergeron case was one of joint purchase, not partnership, wherein it appeared the defendant had induced the plaintiff to join in a land deal, each to pay one-half of the price, which the defendant represented to be larger than it was. Bergeron advanced one-half the supposed price to pay for his moiety and Miles retained the excess. The action was for money had and received and a judgment for the plaintiff was sustained. In Rice v. Culver, 32 N. J. Eq. 601, it appeared the complainants and certain of the defendants had purchased a tract of land supposed to contain something over seventy-three acres. The purchase was arranged by two of the defendants named Culver and was supposed to be at $1,500 an acre, when in fact it was at a slightly lower figure, and instead of the tract containing seventy-three acres, it contained only sixty-eight, a deficiency of five acres. The suit was in equity for an accounting and to recover the excess of money paid the Culvers on account of the misrepresentations regarding the price of the land and its quantity. The court eliminated the alleged fraud in overcharging, because of explanatory facts tending to show it was an innocent act, but said the deficiency in the quantity of the land had not been satisfactorily explained. The bill in equity was dismissed on a ruling that the proper remedy was at law. Said case was one of partnership, for the land was to be improved at the expense of the buyers and put on the market. The court said if the Culvers received from the subscribers to the agreement under which the land was to be purchased, money which would not have been received but for their misrepresentation as to the number of acres, "an action at law was the appropriate remedy for the injury and the money might

have been recovered accordingly." In More v. Rand, 60 N. Y. 208, the action was for the dissolution of a partnership between plaintiff and the defendant and for an accounting in respect to the business. The defense was that the defendants were induced to enter into the partnership by the fraudulent representation of the plaintiff, and a counterclaim was preferred for damages occasioned by the fraud. The facts were the plaintiff More and one Holley, had been partners in conducting a hotel and had owned a lease on the premises and the furniture subject to a mortgage. More and Holley sold out to the defendants on a contract whereby Holley was to receive $31,000 and More $29,000; but with a reservation that defendants might elect within two months to take More in as a partner, in which case he should accept ten per cent of the future profits in lieu of the $29,000, which was his portion of the price to be paid him and Holley. By election of the defendants More became their partner, and the lower court found a partnership was formed. The counterclaim preferred was based on alleged misrepresentations by More when he and Holley sold to the defendants, regarding the value of the furniture and the profits of the business. The suit was in equity by More for a dissolution and accounting, and the difficulty the appellate court found was not with the question of whether the counterclaim would have been good in a legal action, but whether it could be preferred in a suit in equity. The opinion says (loc. cit. 212) that if the allegations contained in the answer were true, it was clear "an action for deceit would lie against plaintiff for inducing defendants to enter into the contract and purchase Holley's interest, in which they would be entitled to recover substantial damages." And further, that though a joint action might have been maintained against More and his previous partner Holley, it was error to suppose they must be joined. Those defendants were asking to recover from their partner on a counter-

claim, because of his fraudulently inducing them to pay an excessive price for the partnership property. In essence both that case and this one involve the obtention of money by one partner from his associates, by false statements in regard to the value or price of property to be purchased for the firm's business. In Cross v. Cheshire, 7 Exch. 43, it appeared that A and B who were in partnership, had an account in a bank where B kept a private account also. B gave the bank a promissory note signed in the firm name for a balance against him individually. The bank sued A on the note and recovered; and it was held A might then maintain an action at law against B for money paid to B's use. The court said: "If one partner has cheated his fellow-partner through a note given in the name of the firm—unless perhaps where the party is deprived of his remedy by the act being a felonious one— that other party is entitled to recover against him, as for money paid to his use, the sum paid in satisfaction of an apparent debt of his own, created by a fraud on the partnership." Howard v. France, 43 N. Y. 593, and Hale v. Wilson, 118 Mass. 444, are analogous. The foregoing cases suffice as authorities for the proposition that the fact of the partnership is no obstacle to the maintenance of this action. Obtaining money by a partner from his copartners under the circumstances charged against the defendant, with no intention to devote it to firm purposes, but to pocket it, is a transaction which touches the partnership at a tangent and is in no way involved in its proper business. It is simply a fraud unconnected with the partnership, except that the relation presented the opportunity for its commission.

When money is thus obtained, an action for money had and received will lie against the guilty party. [Crigler v. Duncan, 121 Mo. App. 381, 99 S. W. 61; Moses v. McFerlane, 2 Burr. 1005; Winningham v. Fancher, 52 Mo. App. 458.] One defrauded as plaintiffs were, if the statements of the complaint are true, may reclaim from

the guilty party the money or property fraudulently obtained. [Goodger v. Finn, 10 Mo. App. 226.]

It is insisted all the members defrauded were necessary parties to this action and if the others would not join as plaintiffs, they should have been made defendants. Looking to the averments of the complaint, we find Yost, who sold the jack, received his pay in separate notes executed by different members and due one year after date. We find also the members severally contributed to the amount of cash collected by defendant and which he intended to appropriate from the first, according to their respective interests in the jack; plaintiffs contributing $50. Under these circumstances it is clear to us that each person could maintain a separate action to recover his cash contribution. In Calkins v. Smith, supra, one partner made his promissory note and indorsed it in the firm name to pay his own debt to the defendant, who took the note with knowledge of the facts and afterwards indorsed it to an innocent holder. The partnership went through a receivership, in the course of which the note was paid out of the firm's assets, and the action was to recover from the indorsee who had taken the note in fraud and indorsed it to an innocent holder. The court said the case was not a joint fraud on the partners, for which they could unite in an action, but was committed on each partner separately, entitling each to sue alone to recover his damages; that the amount of damages sustained by the different partners was not the same, but was rather in relation to their respective interests in the firm. This is according to the rule stated by Bates and referred to before, namely: if the payment is out of a joint fund or the money borrowed on a joint note, the action will be a joint one, but if the payment is from private means, each partner must recover separately. [Bates, Partnership, sec. 96.] And this doctrine was sustained by Lord ELLENBOROUGH in Osborne v. Harper, 5 East. 225. Others of the cases

we have cited are in accord. We would prefer to say each may sue separately at law; perhaps they might bring a joint suit in equity.

We will now inquire whether or not the amended petition filed in the circuit court, constituted a new cause of action and a departure from the one filed before the justice of the peace. The only effect of the amendment was to state the purchase of the jack in such allegations as made the purchasers co-owners merely, instead of partners. Inasmuch as we have held the copartnership relation, if it existed, did not stand in the way of plaintiff's recovery, and that each member of the firm might recover in a separate action the amount of cash paid defendant, it is obvious the averments of a partnership in the first petition are not of the essence of the case stated, which really consists of the allegations regarding the fraud perpetrated on the purchasers by defendant, whereby he procured money from them and appropriated it to his own use. Whether the transaction sounds in co-partnership or in co-ownership, the case against defendant is the same. It follows that a new cause of action was not substituted by the amended petition, nor did a departure occur. As it happened, this point was thoroughly discussed in Gates v. Paul, 117 Wis. 170, wherein the original petition, which alleged a purchase of lands by the parties as partners, was amended so as to eliminate the element of partnership and ask relief on the theory that the title was taken in the name of the defendant for both himself and the plaintiff, whereby the defendant became a trustee. After an exhaustive discussion of the question, the court held the general scope of the controversy was not altered by taking the partnership averment out of the petition, but that the remedy sought and the facts essential to granting it, remained the same. In the present case the same measure of damages and the same evidence would be essential to make out the cause of action stated in both the

original and the amended complaints, except that under the latter it would be unnecessary to prove a partnership, which is an irrelevant fact. Moreover, both statements count on the same transaction. That the amendment was proper we have no doubt, and the following authorities justify it: Stewart v. Van Horne, 91 Mo. App. 647; Schwab Clothing Co. v. Railroad, 71 Mo. App. 241; Lottman v. Barnes, 62 Mo. 159; Ross v. Land Co., 162 Mo. 317, 62 S. W. 984.

The judgment is reversed and the cause remanded with a direction to reinstate the case, set aside the order striking out the amended statement and proceed with the case. All concur.